CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
01/29/2018
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| AMY MARIE UPDIKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:16-cv-73 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION[1]

Plaintiff Amy Marie Updike ("Updike"), proceeding *pro se*, challenges the final decision of the Commissioner of Social security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f, Updike asserts that the record does not adequately address her hip impairment. Updike also presented new evidence to the court that she alleges supports her claims for benefits. Dkt. Nos. 13 & 14. I conclude that the ALJ failed to properly account for Updike's moderate impairment with concentration, persistence and pace. Accordingly, I **RECOMMEND DENYING** the Commissioner's Motion for Summary Judgment, **GRANTING** Updike's Motion for Summary Judgment and **REVERSING** and **REMANDING** this matter for further administrative consideration consistent with this opinion.

### STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] The Commissioner did not request oral argument in this case. To the extent that Updike's brief requests oral argument, I find that a hearing will not aid in the decisional process and is thus unnecessary.

support the Commissioner's conclusion that Updike failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Remand is appropriate if the ALJ's analysis is so deficient that it "frustrate [s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion leaves the court to guess at how he reached his conclusions regarding Updike's RFC.

---

[2] The Act deems a person disabled for SSI purposes "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

## CLAIM HISTORY

Updike filed applications for SSI and DIB in December 2012, alleging that her disability began on January 15, 2008. R. 227–40. The Commissioner denied the applications at the initial and reconsideration levels of administrative review. R. 85–151.  On June 2, 2015, ALJ Brian P. Kilbane held a hearing to consider Updike's disability claim. R. 42–84.  Updike was represented by an attorney at the hearing, which included testimony from Updike, her daughter, and vocational expert Jeanie Diehl.  Id.

On July 24, 2015, The ALJ entered his decision analyzing Updike's claim under the familiar five-step process[3]  and denying her claim for benefits. R. 12–33.  The ALJ found that Updike suffered from the severe impairments of residual status post total hip replacements, urinary tract disorder, obesity, affective disorder, and anxiety disorder.  R. 14.  The ALJ found that these impairments did not meet or medically equal a listed impairment. R.  15–17.  The ALJ found that Updike had the residual functional capacity ("RFC") to perform sedentary work, except that she can lift and carry 20 pounds occasionally and 10 pounds frequently, frequently balance, occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl and never climb ladders, ropes or scaffolds. R. 17. The ALJ found that Updike should avoid concentrated exposure to extreme cold, wetness, vibration and hazards.  The ALJ further found that Updike retained the ability to perform simple, unskilled work on a sustained basis in a competitive work

---

[3] The Commissioner uses a five-step process to evaluate a disability claim.  Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at step five to establish that the claimant maintains the residual functioning capacity, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

environment. Id. The ALJ determined that Updike could not perform her past relevant work as a weaving inspector, fast food services manager, personnel clerk, office clerk, customer service representative, general house worker, or department manager. R. 31. However, the ALJ determined that Updike could work at jobs that exist in significant numbers in the national economy, such as order clerk, charge account clerk and document preparer. R. 32. Thus, the ALJ concluded that she was not disabled. On October 6, 2016, the Appeals Council denied Updike's request for review (R. 1–3), and this appeal followed.

## ANALYSIS

On appeal, Updike, acting *pro se*, filed a brief alleging that she requested a consultative examination by an agency doctor but was denied, and further that her physicians do not understand why she doesn't receive disability.[4] Dkt. No. 13. I liberally construe her brief to argue that the ALJ's decision is not supported by substantial evidence.[5] Having reviewed the ALJ's decision for substantial evidence, I conclude that the ALJ failed to properly account for Updike's moderate impairments in concentration, persistence and pace, which requires remand.

Updike has congenital hip dysplasia, and has undergone multiple surgeries on her hip, culminating in a hip replacement in May 2008. R. 18. Updike also suffers from back pain, which she relates to complications from her hip replacement surgery. Id. The ALJ reviewed Updike's considerable medical treatment in detail. R. 20–29. The ALJ also reviewed the testimony of Updike and her daughter as to her limitations and found that her medically determinable

---

[4] On June 20, 2017, Updike filed a letter with the court referring to recent medical issues that she asserts support her claim for benefits. Dkt. No. 14. Because I recommend remand of this case on other grounds, I will not address Updike's recent medical issues. I note, however, that the medical appointments to which Updike refers occurred approximately two years after the ALJ's decision in this case and are likely more appropriately addressed by a new application for benefits, rather than relating back to the time period at issue here.

[5] The Commissioner's brief in support of summary judgment focuses solely upon Updike's physical impairments because Updike's brief asserts that the record does not adequately address her hip impairment. Dkt. No. 19 at 3.

impairments could reasonably be expected to cause some of her alleged symptoms, but that their statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible. R. 20.  Specifically, the ALJ noted that Updike's physical examinations did not reveal significant neurological deficits or decreased strength or range of motion.  R. 20.  The objective findings with regard to Updike's complaints of pain in her hip and back have been sporadic, and she generally had normal strength, sensation and range of motion.  Id.  The ALJ noted that medications generally controlled Updike's symptoms and that physical therapy helped considerably in March 2009. Id.

The ALJ generally adopted the opinions of the state agency reviewing physicians in the record that Updike was capable of performing a range of sedentary work, finding them to be consistent with Updike's treatment notes and imagery and testing results. R. 30.  There are no other physician opinions in the record with regard to Updike's physical limitations.  Having reviewed the record, I find that substantial evidence supports the ALJ's determination that Updike is capable of performing a range of sedentary work.

The ALJ also reviewed Updike's mental health treatment in detail. R. 20–29.  Updike was diagnosed with depression, bipolar disorder, anxiety disorder, and has been hospitalized twice for her mental conditions. Id.  At step three of his analysis, the ALJ determined that the severity of Updike's mental impairments did not meet or equal the criteria of one of the listed impairments. R. 15.  Specifically, the ALJ found that Updike had a mild restriction with activities of daily living and social functioning. R. 16.  He determined that Updike had a moderate impairment with concentration, persistence or pace, noting that she reported problems with memory, completing tasks, concentration and following instructions. R. 17, 64.

At step four of his decision, the ALJ reviewed Updike's mental health treatment records, which included complaints of depression, suicidal ideation, fatigue, panic attacks, anxiety and poor concentration. R. 23.  Notably, in October, 2013, Updike was also diagnosed with "ADHD predominantly inattentive type." R. 25.  The ALJ summarized Updike's mental health treatment, stating:

> The claimant generally had normal mental status findings.  Her anxiety symptoms were stable in November 2012.  The claimant reported medications helped her symptoms in April 2013 and said her symptoms were worse since she had been out of medication for ten days.  Medication helped her anxiety in June 2013.  In October 2013, the claimant reported that medication controlled her mood swings without side effects.  She had much improved focus.  She denied mood swings in January 2014.

R. 29 (internal citations omitted).

The ALJ generally adopted the opinions of the state agency reviewing physicians who reviewed Updike's treatment records and determined that Updike is moderately limited in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. 96, 130.  The state agency reviewing physicians also concluded that Updike will have moderate difficulty with complex and/or detailed instructions, concentration, task persistence and work relationships.  R. 97, 131.

Having adopted the opinions of the state agency physicians, the ALJ determined that Updike was capable of performing simple, unskilled work on a sustained basis in a competitive work environment. R. 17.  The ALJ provided no reasoning or explanation for how Updike's difficulty with concentration, persistence and pace is adequately accommodated by a limitation to perform simple unskilled work.  Neither of the state agency physicians found that Updike is capable of performing simple unskilled work on a sustained basis despite her moderate limitation

6

with concentration, persistence and pace, and there are no additional opinions in the record from Updike's mental health providers as to her functional capacity.

The ALJ also did not include Updike's moderate impairments in concentration, persistence and pace in his hypothetical question to the vocational expert, but rather presented a hypothetical individual who retains the ability to perform simple, unskilled work on a sustained basis in a competitive work environment. R. 81.

In Mascio v. Colvin, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary. Id.

Thus, while Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, it underscores the ALJ's duty to adequately review the evidence and explain the decision. The ALJ's responsibility to highlight the evidence of record that supports his conclusion was further emphasized recently in Monroe v. Colvin, where the court found that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically apply the law to the record. 826 F.3d at 189.

7

Here, the ALJ generally adopted the state agency physician opinions which found that Updike will have moderate difficulty with complex and/or detailed instructions, concentration, task persistence and work relationships. R. 97, 131. The ALJ did not explain how "simple unskilled" work accommodates Updike's moderate difficulty with concentration, persistence and pace, and it is not clear from the record what evidence the ALJ relied upon to reach that conclusion. See Mascio, 2015 WL 1219530, at *5–6. There is no specific medical evidence or physician opinion cited in the ALJ's decision to support the ALJ's conclusion that, despite her moderate limitation in concentration, persistence, or pace, Updike is capable of performing the basic mental demands of simple unskilled work. Thus, as in Mascio, this court is "left to guess about how the ALJ arrived at his conclusions." 780 F.3d at 637.

Perhaps the ALJ can explain why Updike's moderate limitations maintaining concentration, persistence, and pace do not require corresponding restrictions in her RFC. His failure to do so in this case, however, is reversible error and requires remand. See id.; White v. Colvin, No. 4:14cv18, 2015 WL 1958885, at *12 (W.D. Va. May 1, 2015); Nichols v. Colvin, No. 7:15cv44, 2016 WL 4529780, at *4 (W.D. Va. Aug. 3, 2016). Thus, this matter should be remanded with instructions to the Commissioner to properly account for Updike's moderate limitation with concentration, persistence and pace.

## **CONCLUSION**

For these reasons set forth above, I **RECOMMEND GRANTING in part** Updike's motion for summary judgment, **DENYING** the Commissioner's motion for summary judgment, and **REMANDING** this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United

8

States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

                Entered: January 29, 2018

*Robert S. Ballou*

                Robert S. Ballou
                United States Magistrate Judge